IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TIMO ANTONIO MATUU,                )    CIVIL NO. 20-00446 HG-KJM
                                   )
              Plaintiff,           )
                                   )
       vs.                         )
                                   )
KILOLO KIJAKAZI, ACTING            )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                                   )
              Defendant.           )
_____    )

**ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS**

This case involves the appeal of the Social Security Administration Commissioner's denial of Disability Insurance Benefits to Plaintiff Timo Antonio Matuu.

On April 26, 2018, Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act.

Plaintiff filed for benefits stating he has been disabled since April 2, 2018, because of gout, edema, obesity, congestive heart failure, vascular disease, osteoarthritis, sciatica, asthma, an aortic aneurysm, and chronic obstructive pulmonary disease ("COPD").

The Social Security Administration initially denied his application for Disability Insurance Benefits. The Administration denied the application on reconsideration.

Following an administrative hearing, the Administrative Law

1

Judge ("ALJ") issued a decision finding Plaintiff was not disabled and could perform work in the national economy.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision and Plaintiff appealed to this Court.

The Court **REVERSES** the decision of the Social Security Administration Commissioner and **REMANDS** the case for further evaluation.

## PROCEDURAL HISTORY

On April 26, 2018, Plaintiff filed an application for Disability Insurance Benefits with the Social Security Administration.  (Administrative Record ("AR") at pp. 15, 92, ECF No. 11).

On June 21, 2018, the Social Security Administration denied Plaintiff's initial application.  (AR at pp. 126-29).

On September 11, 2018, the Administration denied his request for reconsideration.  (AR at pp. 130-35).

Following the denial of Plaintiff's request for reconsideration, he sought a hearing before an Administrative Law Judge ("ALJ").  (AR at p. 136).

On February 21, 2020, an ALJ conducted a hearing on Plaintiff's application.  (AR at pp. 37-65).

On March 3, 2020, the ALJ issued a written decision denying Plaintiff's application for Disability Insurance Benefits.  (AR at pp. 15-28).

Plaintiff sought review by the Appeals Council for the Social Security Administration.  The Appeals Council denied further review of Plaintiff's application on August 14, 2020, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (AR at pp. 1-3).

On October 19, 2020, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny his application for Disability Benefits in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint for Review of Social Security Disability Insurance Determination, ECF No. 1).

On January 25, 2021, Defendant filed a Motion for Extension of Time to File Answer, which was granted.  (ECF Nos. 7-8).

On April 1, 2021, the Magistrate Judge issued a briefing schedule.  (ECF No. 12).

On May 24, 2021, Plaintiff filed PLAINTIFF'S OPENING BRIEF. (ECF No. 13).

On July 9, 2021, the Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 15).

On July 23, 2021, Plaintiff filed PLAINTIFF'S REPLY BRIEF. (ECF No. 16).

On October 25, 2021, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.  (ECF No. 18).

**BACKGROUND**

**Plaintiff's Work History**

Plaintiff is a 48 year-old male.  (Administrative Record ("AR") at p. 26, ECF No. 11).

From 2009 to 2012, Plaintiff did not work and was on Social Security Disability due to his congestive heart failure and Chronic Obstructive Pulmonary Disease ("COPD").  (Id. at pp. 51-52, 56).

In 2012 Plaintiff returned to work and Plaintiff worked as a maintenance technician and supervisor through March 2016.  (Id. at pp. 26, 101).  Plaintiff worked as an appliance mechanic from October 2017 through February 2018.  (Id.)

Plaintiff performed work as a truck driver for three months from February 2018 through April 2, 2018, the date he alleges he became disabled and unable to work.  (Id. at pp. 15-17, 26, 41, 101).

**Plaintiff's Medical History**

**Obesity**

Plaintiff has a history of being overweight and was diagnosed with "morbid obesity" in February 2015.  (Id. at p. 419).

Plaintiff has a height of 5'9" and his weight is documented in his medical records as low as 270 pounds and as high as 308 pounds.  (Id. at p. 23).  Plaintiff's Body Mass Index was in the

range of 39.83 to 45.48.  (Id. at pp. 23-24).  The Clinical
Guidelines cited by the Administrative Law Judge explain that a
Body Mass Index greater or equal to 40 is considered "extreme"
obesity, which represents the greatest risk for developing
obesity-related impairments.  (Id. at p. 24, n.1).

**Respiratory Conditions: Asthma and Chronic Obstructive Pulmonary Disease ("COPD")**

Plaintiff has a history of receiving medical treatment for
breathing issues and has been diagnosed with asthma, chronic
bronchitis, acute respiratory distress, and COPD.  (Id. at pp.
419, 814).

In January 2020, findings from a chest x-ray showed
bronchiectasis, a permanent damage of Plaintiff's lungs due to
persistent infection along with bronchial wall thickening causing
excess fluid and mucus buildup in the small airway passages of
his lungs.  (Id. at p. 928).

**Congestive Heart Failure And Aortic Aneurysm**

In 2009, Plaintiff was diagnosed with congestive heart
failure and was receiving Social Security Disability until he
returned to work in 2012.  (Id. at pp. 51-52).

In April 2015, Plaintiff was found to have an abdominal
aortic aneurysm that was asymptomatic.  (Id. at p. 414).

On October 8, 2015, Plaintiff was diagnosed with chronic
diastolic heart failure.  (Id. at p. 419).

5

On September 8, 2017, a chest x-ray showed fluid on the lungs and indications of superimposed mild congestive heart failure. (Id. at p. 523). The following month, in October 2017, a chest x-ray showed mild cardiac enlargement with prominent interstitial markings. (Id. at p. 557).

On January 20, 2020, he was referred to vascular surgery for his aortic aneurysm because it had dilated. (Id. at p. 921).

**Edema - Leg Swelling**

Plaintiff has a history of edema in his legs which is related to his congestive heart failure diagnosis beginning in 2009. (Id. at p. 22). Edema is the medical term for swelling and it happens when small blood vessels leak fluid into nearby tissues. See Matthew Hoffman, MD, What Is Edema?, WebMD, https://www.webmd.com/heart-disease/heart-failure/edema-overview (last visited Nov. 23, 2021). Edema is caused by congestive heart failure because the heart is too weak to pump blood around the body causing fluid to build up in the body's tissues. (Id.)

On February 11, 2016, Plaintiff was referred to Queen's Medical Center and was found to have new onset of edema in his lower extremities and was prescribed HCTZ medication to be taken as needed. (Id. at pp. 442-43). Plaintiff was instructed to "elevate legs" as treatment for his edema. (Id. at p. 444).

On March 24, 2016, Plaintiff returned to Queen's Medical Center for evaluation and his medication was switched to Lasix as his edema worsened and included inflammation of his skin tissue.

(Id. at p. 450).

On September 8, 2016, Plaintiff sought treatment at the Waianae Coast Comprehensive Health Center because his edema condition remained a problem causing persistent, moderately severe pain. (Id. at p. 452). Plaintiff stated that his edema improved with elevation of his legs. (Id.) Plaintiff was prescribed HCTZ again, he was advised to restrict salt, and provided with pressurized compression stockings. (Id. at p. 456). Plaintiff was instructed to elevate his legs daily 2-3 times. (Id.)

On February 26, 2018, Plaintiff went to the emergency room at Waianae Health Center because of progressive pain and swelling in his lower extremities, with pain severity of 4 out of 5. (Id. at p. 692). Plaintiff had been taking Lasix for his edema but not recently. (Id.) The doctor found edema was present in Plaintiff's lower extremities with pitting in the skin, and engorged legs with his left calf of 16 inches in diameter and a right calf of 16.5 inches in diameter. (Id. at p. 694). He also suffered from hyperpigmentation. (Id.) The medical records also reflect gout in Plaintiff's right toe. (Id.)

On June 13, 2018, Plaintiff was examined by a vascular doctor, Dr. Dean Sato M.D., who found Plaintiff's legs had "brawny edema, scattered varicose veins, circumferential dark brown/black discoloration." (Id. at p. 640). Brawny edema is swelling that is dense and feels firm, causing the skin to become thick, dark, and atrophic. The medical records reflect a

diagnosis of "bilateral leg chronic venous insufficiency with some varicose veins and chronic inflammatory skin changes - extensive venous stasis skin changes - using Ted hose stockings - not adequate compression.  Morbid obesity with lymphedema - compounding leg problems."  (Id.)  Dr. Sato states that the Ted hose used by the Plaintiff on his legs was inadequate and he needed to use knee high compression stockings to prevent irreversible damage to Plaintiff's legs.  (Id.)

In April 2019, Plaintiff's medical records confirmed that he continued to have bilateral edema in his legs.  (Id. at p. 770).

On October 29, 2019, Plaintiff was examined at Queen's Medical Center.  (Id. at p. 937).  Plaintiff was found to have lower extremity edema for which he was prescribed furosemide. (Id.)  Plaintiff was instructed to elevate his legs to treat his edema.  (Id.)

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.  <u>See</u> 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see also</u> <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1413 (9th Cir. 1993).

**ANALYSIS**

## I.   Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. § 423.  The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled.  The Commissioner of the Social Security Administration reviews a disability claim by evaluating the following:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## II.   The Administrative Law Judge Reviewed Plaintiff's Application By Using The Five-Step Sequential Evaluation

At Plaintiff's February 21, 2020 administrative hearing, the Administrative Law Judge ("ALJ") for the Social Security Administration reviewed Plaintiff's claim by engaging in the five-step sequential evaluation.

The Parties agree there were no errors in the first three steps of the administrative review process.

**At step one**, the ALJ found that Plaintiff met the insured status requirements for Disability Insurance Benefits through December 31, 2021. (AR at p. 17, ECF No. 11).

**At step two**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2018.  (Id.)

**At step three**, the ALJ found that Plaintiff has the following severe impairments: obesity, congestive heart failure, peripheral vascular disease, osteoarthritis of multiple sites, left sciatica, asthma, and chronic obstructive pulmonary disease. (Id.)

**At step four**, the ALJ reviewed the record and made a finding as to Plaintiff's residual functional capacity.

The ALJ found that Plaintiff had not demonstrated a disability based on his obesity alone (Id. at p. 19).

The ALJ found that Plaintiff could not perform his past work as of April 2, 2018. (Id. at p. 26).

The ALJ found that Plaintiff could perform light work as follows:

> The claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds or less frequently.
>
> The claimant can stand and/or walk for two hours out of an eight-hour workday with regular breaks.
>
> The claimant can sit for six hours out of an eight-hour workday with regular breaks.
>
> The claimant can frequently balance, he can perform all other posturals occasionally, except he can never climb ladders, ropes, or scaffolds; he cannot work at unprotected heights, around moving machinery, or other hazards.
>
> The claimant must avoid concentrated exposure to fumes, odors, gases, or other pulmonary irritants, as well as extreme temperatures.
>
> The claimant cannot perform jobs doing fast paced production or assembly line type work.
>
> The claimant can do no jobs requiring binocular vision or depth perception.

(AR at p. 19, ECF No. 11).

**At step five**, the ALJ inquired with the Vocational Expert to evaluate if there were other jobs that Plaintiff could perform.

The ALJ found that Plaintiff could perform work as an Addresser, a Document Preparer, a Call Out Operator, a Ticket Taker, an Order Caller, or a Subassembler.  (Id. at p. 27).

Plaintiff's application for Disability Insurance Benefits was denied.  (Id. at p. 28).

### III. Remand Is Required To Enable The ALJ To Develop The Record And Properly Consider The Totality Of Plaintiff's Incapacity

At step five of the five-step sequential process, the ALJ must determine if the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(g)(1).  In making this determination, the ALJ relies on the Dictionary of Occupational Titles as well as testimony of vocational experts who testify about specific occupations that a claimant can perform based on their residual functional capacity.  Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015).

### A.   The ALJ Did Not Properly Incorporate Plaintiff's Limitations Due To Edema In Considering His Residual Functional Capacity

Plaintiff argues that the ALJ failed to include Plaintiff's limitations related to his edema in the residual functional capacity and that remand is required.  Specifically, Plaintiff

12

argues that the ALJ overlooked Plaintiff's medical records that directed Plaintiff to elevate his legs to reduce swelling and pain caused by his edema.

The medical records provide that on February 11, 2016, September 8, 2016, and October 29, 2019, Plaintiff's multiple medical providers instructed Plaintiff to elevate his legs to treat his edema.  (AR at pp. 444, 452, 456, and 937).

Plaintiff testified that if he spends a lot of time standing or walking his legs swell up to the point where it feels like his skin will rip open.  (Id. at p. 44).  Plaintiff stated, "[u]nless I sit down and elevate it, it'll continue that way.  But there are times where I'm in the middle of an area where I cannot elevate my legs.  There is no place for me to sit down and do that, so even more so I have to endure the pain until I can either go home or find a place where I can sit down and elevate my legs."  (Id.)  Plaintiff testified that he regularly elevates his legs "[a]lmost all day."  (Id.)  Plaintiff testified that his doctors instructed him that he should elevate his legs every chance he gets when he sits down or his edema will continue to worsen.  (Id.)  Plaintiff stated that if he had a job where he was unable to elevate his legs regularly, "[t]hey would swell up really bad, to where I'd have to tell my boss I need to go home, or I need to go to the ER."  (Id. at p. 56).

The ALJ did not incorporate limitations for Plaintiff to elevate his legs into the residual functional capacity.  The ALJ inquired with the Vocational Expert about jobs present in the

13

community that someone with Plaintiff's limitations could perform.  The ALJ asked if an individual required one unscheduled break to elevate his legs, would he be employable?  (Id. at p. 63).  The Vocational Expert testified, no, if an unscheduled break to elevate his legs occurred on a daily basis it would be preclusive.  (Id.)  Despite this testimony, the ALJ found that Plaintiff could obtain work in the economy and declined to incorporate Plaintiff's edema restrictions in the residual functional capacity.

The swelling in Plaintiff's legs is not a subjective symptom, but an observable, medically documents physical condition that the ALJ was obliged to assess and consider.  Romo v. Astrue, 2010 WL 3386448, *4 (C.D. Cal. Aug. 26, 2010). Plaintiff's medical records reflect that he has been diagnosed with congestive heart failure and morbid obesity which result in edema and swelling in his legs.  (AR at pp. 22, 442-43, 452, 640).  There are numerous instances in the medical records where Plaintiff's treating physicians instructed him to elevate his legs.  (Id. at pp. 444, 456, 937).  Plaintiff also testified extensively that elevating his legs is necessary for him to treat his edema.  (Id. at pp. 44, 56).  The ALJ is not required to discuss every piece of evidence or address every issue but must explain why significant probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). There is objective medical evidence in the record that Plaintiff is required to elevate his legs 2 to 3 times a day to treat his

14

edema.  The ALJ never addressed this limitation and did not provide a basis for rejecting it and not incorporating it into the residual functional capacity.

Plaintiff testified that he needed to elevate his legs for most of the day in order to treat his edema.  There is evidence in the record that elevating Plaintiff's legs helped to treat the condition, but the ALJ rejected Plaintiff's testimony without providing any specific reason.  Here, the ALJ recited medical evidence in the record and stated generally that "the undersigned finds that evidence about the duration and frequency of the claimant's symptoms does not support the level of symptomology that the claimant alleged."  (AR at pp. 24-25, ECF No. 11).  The ALJ's general statement is insufficient to reject Plaintiff's testimony.  The ALJ may reject the claimant's testimony about the severity of symptoms only by providing specific, clear, and convincing reasons for doing so.  Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).

The ALJ found that the "claimant's edema issues appeared relatively well managed with the appropriate use of Lasix and there was no indication he needed to elevate his legs for most of the day."  (Id. at p. 25).  The ALJ's statements conflict with the objective medical evidence and do not provide specific, clear, and convincing reasons for rejecting the Plaintiff's testimony.  The ALJ's finding that Plaintiff's edema was "relatively well managed" with the use of medication alone conflicts with the medical records.  The treating physicians

prescribed Lasix and other medications to treat Plaintiff's edema, but no one form of treatment was successful.  The records demonstrate that Plaintiff's treating physicians recommended various forms of treatment for his edema, including elevation of Plaintiff's legs, because medication alone was insufficient.  The ALJ is not allowed to make her own assessment as to the efficacy of the Plaintiff's medications.  Smith v. Colvin, 2016 WL 4059627, *3-*4 (C.D. Cal. July 27, 2016).  The ALJ's assessment is not a clear and convincing reason for rejecting Plaintiff's testimony.  Brown-Hunter, 806 F.3d at 488-89.

### B.   The ALJ Had A Duty To Develop The Record And Did Not Consider The Totality Of The Circumstances

On appeal, the Agency argues that the ALJ properly incorporated Plaintiff's edema limitations because it believes that Plaintiff would be able to elevate his legs on lunch breaks and would remain employable.  This is not clear from the record. The ALJ never asked the Vocational Expert about this concept. Rather, the Vocational Expert testified that if Plaintiff required an unscheduled break to elevate his legs there would be no jobs in the economy that he could perform.

The ALJ is required to develop the record and evaluate the medical opinions provided.  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  The ALJ could have asked the Vocational Expert about Plaintiff's ability to elevate his legs 2-3 times a day as provided in the medical records.  The ALJ

16

could have inquired with a medical expert about the frequency needed for Plaintiff to elevate his legs and determine whether unscheduled breaks would be necessary for Plaintiff to treat his edema.  The ALJ failed to do so.  Instead, the ALJ improperly relied on discrete findings from various records that were taken out of context.  It is well-settled that an "ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."  Williams v. Colvin, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015).

An ALJ cannot selectively rely on some entries and ignore others indicating continued or severe impairments in a claimant. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001).  Here, Plaintiff suffers from multiple, severe impairments including congestive heart failure, morbid obesity, COPD, and asthma.  The ALJ did not consider these effects collectively but selectively picked out instances in the medical record that noted improvement in Plaintiff's symptoms.

Remand on an open record is necessary to allow the ALJ to develop the record, consider the totality of Plaintiff's circumstances, and properly evaluate Plaintiff's testimony and the opinions of Plaintiff's numerous treating physicians. Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

## CONCLUSION

The Commissioner of Social Security Administration's decision is **REVERSED AND REMANDED** for further proceedings on an open record that is consistent with this Order.

The Clerk of Court shall **CLOSE THE CASE**.

IT IS SO ORDERED.

DATED: December 22, 2021, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Timo Antonio Matuu v. Kilolo Kijakazi; Civ. No. 20-00446 HG-KJM;
**ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS**